UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ERNIE TELIAN,

                    Plaintiff,

v.                                                        3:14-cv-945


TOWN OF DELHI, PETER BRACCI,
JOHN MATHIESEN, SHERRI TELIAN,
JOHN DOE NO. 1, JOHN DOE NO. 2, JOHN
DOE NO. 3, JOHN DOE NO. 4, AND JOHN
DOE NO. 5,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## DECISION and ORDER

Plaintiff Ernie Telian commenced the instant action pursuant to 42 U.S.C. §§

1983, alleging that Defendants violated his Fifth and Fourteenth Amendment rights.

Presently before the Court are Defendants' motions to dismiss Plaintiff's Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). See dkt. #s 8, 22.

## I.    BACKGROUND

This matter concerns disputes over building permits on property where Plaintiff

Ernie Telian and his former wife, Defendant Sheri Telian, resided.  The property in

question consisted of approximately 213 acres located in a "remote and highly rural

area" of the Town of Delhi, New York.  (Complaint, dkt. # 1, at ¶¶ 22-25).  Plaintiff's

Complaint alleges that Ernie and Sheri Telian purchased the property jointly between

1990 and 2004, but only in the name of Sheri Telian.  (Id. at ¶¶ 22-24).  She remains

the owner of record.  (Id.).

The couple built various structures on the property they purchased. They built a home on the property beginning in 1992. (Id. at ¶ 26). The Telians obtained a temporary certificate of occupancy for that property after sufficient completion of the structure. (Id.). In 1993, they built a wood shed on the property. (Id. at ¶ 27). In 2002, the couple added a machine shed. (Id. at ¶ 28). The Telians constructed a cabin/hay shed on their property in or around 2005. (Id. at ¶ 29). Sometime in the 2000s, Plaintiff and his then-wife built another shed. (Id. ¶ 30). This shed, which was on skids, did not require a building permit. (Id.).

Beginning around 2006, Ernie and Sherri Telian began experiencing marital difficulties. (Id. at ¶ 31). They continued to live together. (Id.). Sherri Telian brought an action for divorce in or around 2009. (Id. at ¶ 32). She moved out of the marital residence, though she remained the owner of record of the properties in question. (Id.). The divorce became very bitter, and continued throughout 2011. (Id. at ¶ 33).

Plaintiff alleges that on July 28, 2014, Defendant Sherri Telian visited Defendant John Mathiesen, Code Enforcement Officer for Defendant Town of Delhi. (Id. at ¶ 34). She discussed the real property that had been the Telians' marital residence. (Id.). Plaintiff alleges that the reason for Sherri Telian's visit to Mathiesen was to harass and intimidate Ernie Telian. (Id.). According to Plaintiff, she was motivated by her "bitterness and animosity . . . arising from the marital difficulties and divorce proceeding." (Id.). Plaintiff further alleges that Defendant Town of Delhi "and its representatives, including but not limited to" Defendant Mathiesen and Peter Bracci, the former Town Supervisor, "aided and abetted and conspired with Defendant Sherri Telian to accomplish her aims." (Id. at ¶ 35). All of these defendants "act[ed] with the

intent to inflict maximum harm upon plaintiff Ernie Telian." (Id.).

On or about August 11, 2011, Plantiff saw Defendant Mathiesen in his driveway, accompanied by the Town Constable. (Id. at ¶ 36). When confronted by the Plaintiff, Mathiesen informed him that Defendant Sherri Telian had given him permission to enter the property and investigate alleged code violations. (Id. at ¶ 37). Plaintiff advised Mathiesen that he should call Plaintiff and make an appointment. (Id.). Mathiesen advised that he would. (Id.). Mathiesen did not make an appointment, and at first refused to return Plaintiff's calls. (Id. at ¶ 38). Plaintiff eventually contacted Mathiesen, who promised that the two could "work it out." (Id.). Eventually, however, Mathiesen informed Plaintiff that he had spoken to Defendant Bracci. (Id.). The two determined to issue appearance tickets because the buildings at issue had been constructed or installed without obtaining building permits. (Id.). The appearance tickets named both Plaintiff and Defendant Sherri Telian. (Id. at ¶ 40). Mathiesen originally stated that the appearance tickets would issue only to Sherri Telian, who was the record owner of the house. (Id.).

Plaintiff alleges that the Town is normally "very lax in enforcing building permits," and that many buildings similar to those on Plaintiff's property "are erected without first obtaining building permits and without prosecution by the town." (Id. at ¶ 39). Plaintiff made numerous attempts to contact Mathiesen and resolve the situation. (Id. at ¶ 44). Mathiesen ignored these efforts, even though, Plaintiff alleges, municipalities acting in good faith often allow for informal resolutions of such matters. (Id.). Plaintiff also contends that the tickets were issued on the basis of information provided by Sherri Telian. (Id. at ¶ 41). The buildings in question, he alleges, were not visible from the

3

driveway where Plaintiff encountered Defendant Mathiesen on August 15, 2011. (Id.).

Plaintiff's case eventually went to trial. (Id. at ¶ 42). Though the matter involved routine allegations of code violations, the case was prosecuted by a special counsel from Albany, Joseph Castiglione. (Id.). Plaintiff alleges that Defendant Bracci engaged Castiglione as counsel without obtaining approval from the Town Board. (Id.). Though the appearance tickets were issued to both Plaintiff and Sherri Telian and Sherri Telian was the record owner of the property and had been living on the property when the buildings were constructed, at trial Town Justice Richard Gumo informed Sherri Telian that she was not required to testify. (Id. at ¶ 43).

In February 2012, Town Justice Richard Gumo issued a decision that found Plaintiff solely guilty of violating the Town of Delhi's zoning ordinances. (Id. at ¶ 46). Plaintiff was fined $100,000, an amount that Plaintiff alleges "was outrageous and shocking to the conscience." (Id. at ¶ 47). Plaintiff then attempted to contact Mathiesen and obtain the necessary permits and certificates of occupancy. (Id. at ¶ 54). Mathiesen ignored these efforts. (Id.). Plaintiff eventually secured the permits and certificates in question at minimal expense. (Id. at ¶ 57).

Defendant Town of Delhi obtained a civil judgment against Plaintiff individually. (Id. at ¶ 48). The Town then restrained the bank account of a business in which Plaintiff had an interest, Spring Lake Tree Service, Inc. (Id. at ¶ 49). The Defendant Town then caused the contents of that account to be paid to the Town. (Id.). Spring Lake Tree Service, Inc., was unable to conduct business during 2012 because of this restraint on its account. (Id. at ¶ 50). Plaintiff Ernie Telian was without income. (Id.).

Plaintiff also alleges that in or around March 2012 the Town of Delhi assessor

4

informed Plaintiff that he would not be permitted to file an application for a farm exemption for the property because Sherri Telian, not Plaintiff, was the owner of record. (Id. at ¶ 51). Plaintiff had previously been permitted to file for an exemption in his own name. (Id.).

In or around March 2012, Defendant Town of Delhi instituted an action against Plaintiff seeking substantial civil penalties for non-compliance from January 2012 to August 2012. (Id. at ¶ 55). The court denied the Town's motion for summary judgment in June 2013. (Id.). On September 13, 2013, the Delaware County Court reversed and vacated Town Justice Gumo's February 2012 decision. (Id. at ¶ 53). The Town appealed both of these decisions. (Id. at ¶ 56). While the appeals were pending Defendant Bracci was voted out of office. (Id. at ¶ 57). The Town withdrew its appeals and agreed to vacate its judgment against Plaintiff by stipulation on June 20 and June 24, 2014. (Id. at ¶ 59).

Plaintiff contends that an unlawful conspiracy existed among the Defendants which was "undertaken with malice and the intention to harm him to the greatest extent possible[.]" Id. at ¶ 60. Plaintiff alleges that Defendants' actions were motivated by the Telians' bitter divorce and a history of political animosity between Plaintiff's family and those of the Defendants. (Id.).

Plaintiff filed his complaint on July 28, 2014. Plaintiff alleges that Defendants' conduct violated his rights to equal protection and due process. (Id. at ¶ 64). He contends that he was forced to expend considerable attorneys' fees as a result of Defendants' conduct, and that he suffered extreme emotional distress that required psychological counseling. (Id. at ¶ 52). Plaintiff also contends that Defendants acted

outrageously and he is therefore entitled to punitive damages in this case.  (Id. at ¶ 67).

Defendants filed motions to dismiss and the parties have briefed the issues, bringing

the case to its present posture.

## II.    LEGAL STANDARD

Plaintiffs have filed motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  In addressing such motions, the Court must accept "all factual

allegations in the complaint as true, and draw[] all reasonable inferences in the

plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet

does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570

(2007)).

## III.    ANALYSIS

Defendant Sherri Telian filed a motion to dismiss, as did Defendants Town of

Delhi, Peter Bracci and John Mathiesen.  The Court will address each motion in turn.

### A.  Defendant Sherri Telian

Defendant Sherri Telian moves for dismissal on two grounds: that Plaintiff's

equal protection claim must fail because he has not alleged that a comparatively

situated person was treated differently and that Plaintiff has not alleged that Sherri

Telian engaged in state action by conspiring with the other Defendants.   The Court will

address each in turn.

### i. Equal Protection Claim

Plaintiff alleges that Defendants' conduct in bringing claims against him for violating zoning regulations amounts to a violation of his equal-protection rights. Defendant argues that Plaintiff's allegations are insufficient to raise a claim based on a "class-of-one" theory. The Plaintiff appears to agree that this case amounts to a "class-of-one" claim. Under those circumstances, a plaintiff may "state an equal protection claim where [he] allege[s] that [he was] intentionally treated differently from other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Such plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Id. "The purpose of requiring similarity is to make sure that no legitimate factor could explain the disparate treatment." Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012). To prevail, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." Clubside, 468 F.3d at 159.

Defendant's position is that Plaintiff has not pointed to any comparators who were similarly situated to him. Instead, Defendant claims, Plaintiff merely points to the Town's general policy or practice, which is much more forgiving to violators of zoning

7

laws than Plaintiff experienced. Defendant labels these allegations as "conclusory." Defendant is correct that a generalized claim that the Town's enforcement of zoning issues was different in this case than in other cases would not be sufficient, absent more, to support an equal protection claim. Such allegations do not amount to a claim that any particular person whose circumstances were highly similar to Plaintiff's was treated differently.

Plaintiff insists that, in Defendant Sherri Telian, he has pointed to one comparator who was similarly situated and permits a finding of an equal protection violation. One case cited by the Defendants, Zito v. Town of Wawayanda, does point out that a "[p]laintiff must identify *at least one* comparator with whom it shares 'an extremely high level of similarity[.]" 571 Fed. Appx. 70, 71 (2d Cir. 2014) (emphasis added). Here, Plaintiff's Complaint alleges that Defendant Sherri Telian was treated very differently than he, despite the fact that the property on which the zoning violations occurred was in her name and she was responsible for helping construct the structures in question. Plaintiff, not Sherri Telian, was subjected to lengthy court proceedings and issued a substantial fine.

Plaintiff's Complaint does not plausibly allege, however, that any of the Defendants played a role in the decision to subject only Plaintiff to a fine for the allegedly illegal structures on the property. Read in the light most favorable to the Plaintiff, both Plaintiff and Sherri Telian faced potential legal consequences for the structures on the property that Sherri Telian owned until the Town Court's decision in the case. The decision that singled out Plaintiff and failed to hold Sherri Telian liable for zoning violations was not made by any named defendant, however. Instead Town

8

Justice Gumo came to the conclusion about which Plaintiff complains. Before that legal proceeding, the Defendants' actions had equally exposed both Plaintiff and Sherri Telian to liability. Based on those allegations, Plaintiff could not plausibly prevail on a claim that *Defendants* treated a similarly situated individual differently. The Court will therefore grant the Plaintiff's motion in this respect.

The motion will be granted without prejudice, since Plaintiff has alleged that other persons, unnamed and not described in detail sufficient to determine whether they were similarly situation, were treated differently than he was in zoning matters.[1]

### ii.    State Action

Defendant Sherri Telian next argues that, even if Plaintiff could state an equal protection claim, Plaintiff has failed to allege facts by which Sherri Telian could possibly be considered to have engaged in state action by conspiring with Defendants who were employed by the Town of Delhi. Plaintiff responds that his complaint contains detailed factual allegations about the relationship between Sherri Telian and various members of the Town of Delhi government. That, combined with the irregularities in a prosecution that give rise to the equal protection claim, should permit the Court to conclude that Plaintiff has alleged a conspiracy. The Court will address this issue because Sherri Telian could not be liable if she were not a state actor, even if Plaintiff successfuly repled his equal protection claim.

---

[1] In reply to Defendant's brief in opposition to their motion, Defendants Town of Delhi, Mathiesen, and Bracci, introduce the findings of Town Justice Gumo, who dismissed the case against Sherri Telian because the couple's divorce settlement left Plaintiff with exclusive control of the property. These findings are irrelevant to the experience of other potential comparators.

Plaintiff brings his claim under 42 U.S.C. §§ 1983. "Section 1983 provides a right of action against any person who 'under color of' state law subjects another person to a 'deprivation of any rights, privileges or immunities secured by the Constitution and laws." Carols v. Santos, 123 F.3d 61, 65 (2d Cir. 1997) (quoting 42 U.S.C. §1983). To bring a claim under the statute, the plaintiff must first demonstrated that the Defendants' actions "come within the definition of 'under color of' law." Id. When the defendant in such a claim is a private actor, "'the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992)). Thus, "a private actor acts under color of state law when the actor 'is a willful participant in joint activity with the State or its agents.'" Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's rights." Betts v. Shearman, 751 F.3d 78, 85 (2d Cir. 2013) (internal citations omitted). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello, 292 F.3d at 324.

Plaintiff treats his claim against Sherri Telian as one that alleges a conspiracy to violate his constitutional rights. "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983). To properly allege conspiracy to violate § 1983, a Plaintiff "must allege (1) an

10

agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing dmaages." Ciambriello, 292 F.3d at 324-325.

Plaintiff's brief points to a number of factual allegations which he contends support his claim that Defendant Sherri Telian conspired with Town of Delhi officials to violate Plaintiff's rights. Plaintiff alleges that Sherri Telian went to John Mathiesen "to harass and intimidate plaintiff" because of her "animosity and bitterness" over the couple's divorce. Sherri Telian, Plaintiff insists, "was well positioned to exercise influence with the Town and to cause considerable mischief for plaintiff Ernie Telian." Plaintiff contends, and alleges in his Complaint, that Telian's father had formerly been a Town Supervisor and "continued to exercise considerable political influence within the Town." Defendant Bracci, according to the Plaintiff, "owed his position to Gary Manning," and had a grudge with Plaintiff because Plaintiff's father, a former County Sheriff, did not recommend Bracci for a position with the New Hampshire State Police. Moreover, Bracci had once been served process by Plaintiff. Finally, Plaintiff notes that Sherri Telian "was a friend of the Clerk for the Town Justice who eventually heard the matter against plaintiff."

The Court finds these allegations insufficient to support a claim that Sherri Telian acted under color of state law. The only allegation that could possibly be construed as an action on Sherri Telian's part is the claim that she spoke with Defendant Mathiesen with regard to the non-compliant buildings on property that she owned and which Plaintiff occupied. Sherri Telian apparently reported the situation to Mathiesen. Giving the Complaint the required generous reading, if any agreement occurred between a

11

state actor and a private party, that agreement must have been formed during that conversation. The Complaint alleges, however, that Sherri Telian, like Plaintiff, was issued an appearance ticket after Mathiesen inspected the property. How she could conspire with Mathiesen to violate Plaintiff's rights when Mathiesen issued her the same ticket as he issued Plaintiff is unclear. Sherri Telian faced the same legal jeopardy after that conversation as Plaintiff did. Plaintiff relies on other, conclusory, allegations based on her family connections, her personal relationships with some court officials, and the Town of Delhi's complex political dynamics to avoid this conclusion. These allegations are conclusory–they simply imply that a conspiracy must have excited because of the relationships between the parties. Such allegations do not plausibly suggest that Sherri Telian committed acts in concert with a Town official to deny Plaintiff his rights.

The Defendant's motion will therefore be granted and Defendant Sherri Telian dismissed from the case.[2] The motion will be granted without prejudice, however, to Plaintiff filing an amended complaint that plausibly alleges that Sherri Telian actually conspired with Town officials to violate Plaintiff's right.

### B. Defendants Town of Delhi, Peter Bracci and John Mathiesen

Defendants Town of Delhi, Peter Bracci and John Mathiesen also move for dismissal of Plaintiff's Complaint on several grounds. The Court will address each in turn.

### i. Equal Protection

---

[2]Plaintiff argues that he also raised a due process claim and that Defendant Telian did not move to dismiss that claim. Since the Court has found that Plaintiff did not allege state action on Sherri Telian's part, all claims against her brought pursuant to § 1983 are dismissed.

Defendants offer arguments nearly identical to those raised by Defendant Sherri Telian in arguing that Plaintiff's equal protection claim should be dismissed. For the same reasons as stated above in reference to Defendant Telian, the Court will grant the motion. Plaintiff has not plausibly alleged that Defendants treated him differently than a similarly situated individual. As with Defendant Telian's motion, the instant motion is granted without prejudice to Plaintiff filing a complaint that properly alleges conduct violating Plaintiff's equal protection rights.

### ii. Due Process

Defendants argue that Plaintiff's due process claim should be dismissed as well. Defendants contend that Plaintiff has made out neither a substantive due process nor a procedural due process claim. Plaintiff responds that he has alleged facts sufficient to support a substantive due process claim. He also states that he never attempted or intended to bring a procedural due process claim. Thus, to the extent that Plaintiff's claim could be read to attempt to state a procedural due process claim, that claim is dismissed with prejudice. The parties disagree, however, about whether Plaintiff has stated a substantive due process claim.

Defendants argue that Plaintiff cannot make out a substantive due process claim because Plaintiff has not alleged Defendants deprived him of any cognizable property interest by their conduct. Plaintiff admits that he had no right to permits for the buildings in question and no legal right to the farm exemption he allegedly did not receive. Plaintiff contends, however, that he *was* deprived of a constitutionally protected right because he was hauled into court and forced to defend himself. He also

lost property because the Town's actions in freezing his corporate account deprived him of business.

Defendants point to case law that addresses whether a municipality's zoning decisions can violate a plaintiff's substantive due process rights. See, e.g., Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1998) ("to prove that a state official's denial of a permit deprived him of a property right in the permit in violation of the standards of due process . . . [a plaintiff] must first establish that he has a federally protectable property right in the permit."); O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007) (to prevail on their "claim that the Town's refusal to grant a certificate of occupancy . . . was a violation of their constitutional right to substantive due process" plaintiffs need to "show (1) that they had a valid property interest in the certificate of occupancy and (2) that the Town infringed that interest in an arbitrary or irrational manner.").

Defendants point to another case, however, that calls into question their claim that Plaintiff must demonstrate the deprivation of property interest to make a substantive due process claim. In Velez v. Levy, 401 F.3d 75 (2d Cir. 2005), the Second Circuit Court of Appeals addressed, among other issues, whether the district court had properly dismissed substantive and procedural due process claims asserted by an elected New York City community school board member who sued board members and school officials after she was removed from office based on charges the plaintiff claimed were fabricated. Velez, 401 F.3d at 79. The Court found that Plaintiff lacked a property interest in her elected position and could not raise a procedural due process claim based on losing that position. Id. at 87. Despite this lack of a protected

14

property interest, the Court still considered Plaintiff's substantive due process claim, applying the standard that "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregrious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. at 93 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). While this test, the court pointed out, is usually applied "in the context of excessive force claims . . . it can apply to other areas of government activity as well[.]" Id. There is "'no calibrated yard stick'" for determining whether conduct "shocks the conscience," but "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or cause injury' and designed for no legitimate government purpose, 'unquestionably shock the conscience.'" Id. (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001)).

In other words, substantive due process violations can implicate a variety of rights beyond the protected property interests that Defendants cite. Substantive due process exists because "'the touchstone of due process is protection of the individual against arbitrary action of government,' whether the fault lies in the denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" County of Sacramento, 523 U.S. at 845-46. The Supreme Court has emphasized that the due process required by the Fourth Amendment serves "to 'guarantee more than fair process.'" Id. at 840 (quoting Washington v. Glucksberg, 521 U.S. 702, 719 (1997)).

The due process clause thus also "cover[s] a substantive sphere . . . 'barring certain government actions regardless of the fairness of the procedures used to

implement them.'" Id.  The rights protected by substantive due process are not always

easy to identify, but the courts have offered a definition: substantive due process

"specifically protects those fundamental rights and liberties which are, objectively,

'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of

ordered liberty, such that 'neither liberty nor justice would exist if they were sacrificed.'"

Glucksberg, 521 U.S. at 721 (quoting Moore v. East Cleveland, 431 U.S. 494, 503

(1977); Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937)).

To make out a substantive due process claim under such circumstances, courts

have "required . . . a 'careful description' of the asserted fundamental liberty interest."

Id. (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)).  Courts are, however, "'reluctant

to expand the concept of substantive due process[.]'" County of Sacramento, 523 U.S.

at 842 (quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992).  When "'a

particular amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these

claims.'" Id. (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994)).

Defendants contend that Plaintiff was not denied a zoning permit to which he

was entitled and therefore cannot claim substantive due process protection.  Plaintiff

admits he was not entitled to a zoning permit, but argues that his substantive due

process claim is based on "something much more fundamental–the right to be free of

government oppression."  Plaintiff identifies the rights in question as "liberty rights."  He

claims he "was hauled into court and forced to defend himself, a deprivation of his

liberty.  He was deprived of his money, as he was forced to pay attorneys' fees to

defend himself, and had his corporate bank account frozen." Defendants' actions also destroyed Plaintiffs' business and credit, and damaged his mental health.

The Court finds that Plaintiff has not sufficiently alleged deprivation of a particular fundamental right or liberty sufficient to invoke the protection of substantive due process. As pled, the Complaint alleges that Plaintiff's rights were violated by certain prosecutorial decisions that impacted him more than they impacted his ex-wife. Plaintiff's arguments as expressed in his brief mostly center on damages that might be available for deprivation of his constitutional rights, such as loss of income and reputation, as well as damage to his health. To the extent that Plaintiff mentions a particular right or liberty, Plaintiff emphasizes his Fourth Amendment right to be free of governmental action that invades his personal liberty and security. The basis for Plaintiff's claim therefore appears to be a complaint that Defendants unfairly prosecuted him in violation of the Fourth Amendment. See, e.g., Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (to establish a § 1983 malicious prosecution claim in New York, a plaintiff "must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor."). Such a claim sounds in a liberty specifically protected in the Bill of Rights, and is not cognizable as a substantive due process action.

Because Plaintiff's complaint offers only conclusory allegations of the substantive right violated by the Defendants, and because Plaintiff's arguments at least implicate a right actually enumerated in the Bill of Rights, the Court finds that Plaintiff has not stated a plausible substantive due process claim. The motion will be granted in this respect. Because the Court concludes, however, that, in amending the Complaint

17

Plaintiff could conceivably provide a careful description of the fundamental right violated by Defendants' conduct or could point to violation of a particular enumerated right, the Court will grant the motion without prejudice, and will allow the Plaintiff to re-plead the claim to state more specifically the rights allegedly violated.

### iii.  Conspiracy Claim under Section 1983

Defendants next argue that the Court must dismiss Plaintiff's conspiracy claim under Section 1983.  Defendants contend that Plaintiff has failed to state a claim that his rights were violated, and thus no conspiracy to deprive him of those rights can exist. Even if Plaintiff had made out such a claim, Defendants contend, he has not alleged facts sufficient to support a claim that Sherri Telian conspired with the Defendants to violate his rights.

The Court has found that Plaintiff has not stated a claim that his constitutional rights were violated by the Defendants.  As such, Plaintiff has not stated a conspiracy claim.  The Court will therefore grant the Defendants' motion in this respect.  The motion will be granted without prejudice to Plaintiff filing an amended Complaint that properly states the violation of a constitutional right and plausiby alleges a conspiracy to violate that right.

### iv.  Official Capacity Claims against Defendants Bracci and Mathiesen

Defendants Bracci and Mathiesen argue that Plaintiff's claims against Bracci and Mathiesen in their official capacity must be dismissed.  Such claims are the equivalent of claims against the Town itself, and should be dismissed as duplicative.  Plaintiff responds that he "understands that a suit against a municipalities' representative in his

or her official [sic] constitutes an action against the municipality itself." He insists, however, that because he has properly stated a claim against the Town of Delhi, he is entitled to bring a claim against municipal officials in their official capacities.

Plaintiff does not cite to any case law for this proposition. He could not. "Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent[.]'" Thomas v. Venditto, 925 F.Supp.2d 352, 364 () (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)). As such, "courts routinely dismiss official-capacity claims where the plaintiff also sues the municipality." Id. The Court agrees with these holdings. Plaintiff's official-capacity claims against the individual defendants are redundant, and will be dismissed with prejudice.

### v. Claims against the Town of Delhi

Defendants next argue that Plaintiff's claims against the Town of Delhi are based on the doctrine of respondeat superior. Since municipal liability under Section 1983 can only appear when a plaintiff's injuries are the result of an official policy or custom, Plaintiff's claims against the Town must be dismissed.

Liability for a municipality under Section 1983 cannot be premised on a respondeat superior theory. See Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). A Plaintiff seeking to raise Section 1983 claims against a municipality must demonstrate that his rights were violated "pursuant to a governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id. Here, Plaintiff argues that

an official policy or custom was established by the decision of Defendants Bracci and Mathiesen to bring charges against him.  Under those circumstances, "[m]unicipal liability may attach under § 1983 when a city policymaker takes action that violates an individual's constitutional rights.  Even one episode of illegal retaliation may establish municipal liability under § 1983 if ordered by a person whose edicts or acts represent official city policy."  Gronowski v. Spencer, 424 F.3d 285, 296 (2d Cir. 2005).  Not all decisions made by city officials implicate municipal policy in this sense.  Only if "a city official 'has final authority over significant matters involving the exercise of discretion,' [do] his choices represent government policy."  Id. (quoting Rookard v. Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983)).

The Court has found that Plaintiff has not properly alleged any violation of his constitutional rights.[3]  Since his rights were not violated, he cannot allege that his rights were violated pursuant to an official policy or custom, and the motion will be granted in this respect.  The motion will be granted without prejudice, however, since Plaintiff might allege that the Defendant Town's action to prosecute him constituted an official policy or custom.

### vi.  Claims Against Defendant Bracci

Defendants argue that any claims against Defendant Bracci should be dismissed because the Complaint raises no specific allegations against him.  The only allegations

---

[3]The Court notes that Defendants do not address the issue of whether Defendants Bracci and Mathiesen are the sort of policymakers who can establish official policy and thus make the Town of Delhi liable.  Defendants simply argue that Plaintiff has failed to plead a constitutional violation and thus cannot prevail against the Town.

against Bracci, Defendants contend, are broad, non-specific, and conclusory. Plaintiff responds by pointing at allegations in the Complaint that Defendant Bracci had a personal grudge against Plaintiff and his family, and that Bracci and Mathiesen had together decided to issue an appearance ticket to Plaintiff. Moreover, Bracci, without consulting the Town Board, had engaged special counsel to prosecute Plaintiff. Plaintiff sums up his claims as: "defendant Bracci, harboring a grudge against the Telian family, found an opportunity to act on that grudge by assisting the daughter of politically [sic] mentor and patron by pursing a bogus criminal prosecution against [him], complete with special counsel, resulting in a $100,000 fine that ruined Mr. Telian's life." Bracci, Plaintiff contends, used his position as chief executive officer of the Town to persecute Plaintiff.

Because the Court has determined that Plaintiff has not plausibly pled a violation of his constitutional rights, the Court finds that the claims against Defendant Bracci should be dismissed. The claims will be dismissed without prejudice. The Court reminds the Plaintiff, however, that any claims brought against Defendant Bracci in an Amended Complaint must point to specific conduct by Bracci that violated Plaintiff's constitutional rights. Mere allegations of long-standing grudges, political disputes, or personal animosity are insufficient.

### vii. Punitive Damages

Defendants seek to have any claim to punitive damages stricken from the Complaint. They point out that a municipality cannot be liable for punitive damages under Section 1983. See New Windsor Volunteer Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006) (finding that "a municipality itself is immune from a

claim of punitive damages[.]").  Defendants also contend that Plaintiff has not alleged

any conduct which would permit a jury to award punitive damages against the individual

defendants.  Courts have found that "[a] jury may be permitted to award punitive

damages in a § 1983 action when it finds that the defendant's violation of federal law

was intentional . . . or 'when the defendant's conduct is shown to be motived by evil

motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others[.]" McCardle v. Haddad, 131 F.3d 52-53 (2d Cir. 1997)

(quoting Smith v. Wade, 461 U.S. 30, 51 (1983)).

As there are no constitutional claims remaining, the Court will grant the motion to

dismiss any punitive damages claims.  Since Plaintiff is permitted to replead his

Complaint, and such an amended Complaint could conceivably contain allegations of

outrageous conduct, the motion will be granted without prejudice.[4]

### viii.  Intentional Infliction of Emotional Distress

Finally, Defendants assert that Plaintiff has raised a state-law claim for

intentional infliction of emotion distress.  Defendants seek dismissal of that claim.

Plaintiff denies he has raised any such claim.  Careful reading of the Complaint makes

clear that the emotional distress described in the Complaint describes the injuries

Plaintiff claims he suffered, and does not constitute a cause of action.  Since there is no

---

[4]The Court has dismissed Plaintiff's official capacity claims against these individual Defendants.  The Court notes as well that Section 1983 does not permit punitive damages to be awarded against individuals in their official capacities and would dismiss any claim for such damages.  See, e.g., Ivani Contr. Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997) (when town officials are sued "in their *official* capacity only, . . . they enjoy the same immunity from punitive damages as the City.") (emphasis in original).

claim for intentional infliction of emotional distress, that portion of the motion will be granted as unopposed.

### ix. Emotional Distress

In replying to Plaintiff's brief in opposition, Defendants also argue that Plaintiff has not pled facts sufficient to entitle him to damages for emotional distress under Section 1983. To the extent that Plaintiff has not sufficiently pled claims under Section 1983, Defendants are correct.

Though the Court has concluded that Plaintiff's claims should be dismissed, the Court has not dismissed all such claims with prejudice. To the extent that the Plaintiff can re-plead such claims to allege facts sufficient to plausibly support them, the Court finds that dismissal of claims for emotional distress would be premature. Courts "may award damages for emotional suffering in a § 1983 case." Miner v. City of Glens Falls, 999 F.2d 655, 662 (2d Cir. 1993). Proving such a claim requires the plaintiff to "'convince the trier of fact that he actually suffered distress because of the'" loss of the right. Id. (quoting Carey v. Piphus, 435 U.S. 247, 263 (1978)). Thus, if the Plaintiff can allege a violation of his constitutional rights, the determination of whether he is entitled to emotional damages should be reserved until facts sufficient to determine whether he suffered distress can be collected. The pleading stage is too early to make this determination.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motions for summary judgment will be granted, as follows:

1.  The motion of Defendant Sherri Telian, dkt. # 8, is GRANTED without prejudice to Plaintiff filing an amended complaint; and

2.  The motion of Defendants Peter Bracci, John Mathiesen and Town of Delhi, dkt. # 22, is GRANTED, as follows:

a.  The motion is GRANTED with prejudice with respect to Plaintiff's official-capacity claims against Defendant Bracci and Mathiesen, with respect to any procedural due process claims raised by Plaintiff, and with respect to any state-law intentional infliction of emotional distress claims allegedly brought by Plaintiff; and

b.  The motion is GRANTED without prejudice to Plaintiff filing an Amended Complaint with respect to the Plaintiff's remaining constitutional claims as described in the Court's decision.

Plaintiff may file an Amended Complaint within thirty (30) days of the date of this Order.


IT IS SO ORDERED



Thomas J. McAvoy
Senior, U.S. District Judge


Dated: January 9, 2015